UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STANLEY D. CROW, an individual, and S. CROW COLLATERAL CORP., an Idaho corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 1:23-cv-00046-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiffs Stanley D. Crow and S. Crow Collateral Corp.'s Second Motion to Amend Scheduling Order (Dkt. 28) and Plaintiffs' Motion for Leave to Amend Complaint (Dkt. 29). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court denies Plaintiffs' motion to amend the scheduling order and denies in part and grants in part Plaintiffs' motion to amend their complaint.

## I.    BACKGROUND

Crow is an employee, minority shareholder, and a director of S. Crow Collateral Corp. ("SCCC") (Dkt. 1 at ¶ 20).  In November 2015, the IRS informed Crow about a "promoter

examination" (*id*. at ¶¶ 7-8).[1] Thereafter, Crow met with an IRS agent and provided the IRS agent "detailed information about transactions in which SCCC acted as a counterparty" (*id*. at ¶ 9). Additionally, Crow provided the agent with personal information, including that SCCC "has been and is employ[ing]" Crow and that Crow occasionally works for SCCC remotely from his personal residence (*id.*).

In October 2022, the IRS was defending against an action in tax court in which a petitioner was challenging the IRS's "tax treatment of an installment sale" to which SCCC was a counterparty (Dkt. 1 at ¶ 20). The IRS identifies this action as *Harty v. Comm'r of Internal Revenue Serv.*, No. 23354-21 ("*Harty* proceeding") (Dkt. 7-1 at 2).

Plaintiffs allege that, on October 20, 2022, the IRS moved to amend its answer in *Harty* to add the following paragraph containing information about Crow and SCCC:

> Stanley Dean Crow ("Crow") is the President and Director of S Crow Collateral Corporation, EIN: [REDACTED] (hereafter referred to as "SCCC"), located in Crow's personal residence in Boise, Idaho. . . . In 2005, Crow began promoting his Collateralized Installment sales (C453) and later his Monetized Installment sales (M453).

(Dkt. 1 at ¶ 22). Although SCCC's Employer Identification Number (EIN) is redacted in Plaintiffs' complaint in this case, the IRS apparently failed to redact it in *Harty* (Dkt. 1 at ¶ 19) (noting IRS disclosed SCCC's EIN). Further, Plaintiffs allege the IRS stated in its October 2022 motion in *Harty* that "the installment sale at issue in [*Harty*] was the subject of an 'ongoing promoter investigation.'" (Dkt. 1 at ¶ 24).

---

[1]     Generally, a "promoter examination," "promoter investigation," or a "promoter audit" refers to the IRS's investigation to determine whether a person is liable for penalties under 26 U.S.C. § 6700 for promoting abusive tax shelters (Dkt. 1 at ¶ 8).

In January 2023, Plaintiffs filed this action, alleging the IRS violated 26 U.S.C. § 6103 by disclosing their confidential return information in *Harty* (Dkt. 1 at ¶ 25). Specifically, Plaintiffs allege that the IRS's unlawful disclosure of their information included, but is not limited to (1) Crow's identity; (2) that Crow "is the subject of a promoter examination"; (3) that "he at times works remotely, from his personal residence, for SCCC"; (4) that "SCCC was 'located in Crow's personal residence in Boise, Idaho"; and (5) SCCC's EIN (*Id.* at ¶¶ 19, 25). Further, Plaintiffs allege the IRS's disclosures were willful because, among other reasons, Plaintiffs requested the IRS to withdraw the filing in *Harty*, but it did not (Dkt. 1 at ¶ 35).

Plaintiffs' first complaint alleged the IRS unlawfully disclosed Plaintiffs' information in the *Harty* proceeding and asserted a claim for relief under 26 U.S.C. § 7431 (Dkt. 1). Section 7431 creates a private right of action for the knowing or negligent disclosure by an officer or employee of the United States of "any return or return information with respect to a taxpayer in violation of [26 U.S.C. § 6103]." 26 U.S.C. § 7431(a)(1). Further, Plaintiffs sought punitive damages for $500,000. *See* 26 U.S.C. § 7431(c)(1)(B) (providing for punitive damages under certain circumstances).

The IRS moved to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim (Dkt. 7). In ruling on the motion, the Court explained that § 6103 prohibits only the disclosure of "*confidential* tax return information" (Dkt. 13 at 4). The Court acknowledged that at least some of Plaintiffs' information had been disclosed in prior court proceedings (*id.* at 5-7) (citing *S. Crow Collateral Corp. v. United States*, Case Nos. 1:17-mc-09828-EJLREB, 1:17-mc-09829-EJL-REB, 2018 WL 2454630 (D. Idaho Jan. 29, 2018); *United States v. Vaught*, No. 1:18-cv-00452-DCN, 2021 WL 3639414, at *1 (D. Idaho, Aug. 16, 2021); *Crow v. IRS*, No. 1:20-cv-

00518-DCN, 2022 WL 1605265, at *1 (D. Idaho May 20, 2022)). The Court further explained that, given these previous disclosures, Plaintiff's current allegations (without more facts) failed to state a claim that the IRS violated § 6103 for disclosing an ongoing promoter investigation against either Crow, SCCC, or both (Dkt. 13 at 6-7). Regarding whether the IRS unlawfully disclosed SCCC's EIN, Crow's work habits, and SCCC's location, the Court acknowledged the lack of authority on what information qualified as "return information" under § 6103 (Dkt. 13 at 7). The Court therefore held Plaintiffs' complaint states a claim for violation of § 6103, "at least regarding this alleged confidential 'return information' not previously disclosed in judicial proceedings" (Dkt. 13).

As discovery continued, Plaintiffs state they discovered "separate but related" violations of § 6103 in two additional Tax Court proceedings: *Stillahn v. Commissioner*, Tax Court No. 13942-20 ("*Stillahn* proceeding), and *Sand v. Commissioner*, Tax Court No. 10546-22 ("*Sand* proceeding") (Dkt. 29-3 at 4). Plaintiffs state that, like the *Harty* matter, the *Stillahn* and *Sand* proceedings concern alleged tax deficiencies of taxpayers who were counterparties of SCCC in installment sale transactions (*id.*). Plaintiffs allege that in *Stillahn*, the IRS filed a motion seeking leave to file an amendment to an answer and that the IRS shared a draft pleading with Stillahn's counsel "contain[ing] many of the same disclosures" in the *Harty* pleadings (*id.* at 5). Plaintiffs allege they received the draft pleading "through other means" than the IRS's disclosures in the instant litigation (*id.*). Plaintiffs allege that by the next month, they discovered another unauthorized disclosure in *Sand*, which Plaintiffs compare to *Harty*, involving the disclosure of SCCC's EIN (*id.* at 7). Plaintiffs allege the IRS filed a motion acknowledging the disclosure,

sought to redact the EIN, but did not seek to redact other information, including a statement that SCCC is located in Crow's personal residence in Boise, Idaho (*id.*).

Plaintiffs now move to amend the scheduling order "to extend the fact discovery deadline, the deadline for filing dispositive motions, and the deadline for completing alternative dispute resolution ('ADR') for six months" (Dkt. 28-1 at 1). Plaintiffs contend that the IRS has not produced requested documents related to Plaintiffs' claim for punitive damages based on "unfounded privilege objections" and that Plaintiffs "deserve an opportunity to conduct discovery concerning their claims" (*id.* at 2). Shortly after filing the motion to amend deadlines, Plaintiffs also moved to amend their complaint (Dkt. 29). Plaintiffs explain that their amendments relate to "additional violations" of § 6103 in the *Stillahn* and *Sand* proceedings and that these allegations "support Plaintiffs' claim for punitive damages," among other issues (Dkt. 29-3 at 2). Plaintiffs also move for injunctive relief that "prohibits the IRS from (1) disclosing Plaintiffs' return information and (2) allowing its employees to inspect Plaintiffs' return information in violation of § 6103 (Dkt. 29-1 at ¶ 106). The IRS opposes both motions.

## II.    LEGAL STANDARD

### A.    Motion to Amend Scheduling Order

Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, a "schedule may be modified only for good cause and with the judge's consent." Rule 1 provides that the federal rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." While prejudice to the opposing party weighs against an amended schedule, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 609 (9th

Cir. 1992). The court therefore focuses on the diligence of the party seeking a modified schedule. *Id.* A district court may exercise its discretion in managing these deadlines. *Miller v. Safeco Title Ins. Co.,* 758 F.2d 364, 369 (9th Cir. 1985).

**B.    Motion to Amend Complaint**

Rule 16(b)(1) governs motions to amend pleadings filed after the scheduling order deadline and requires a showing of "good cause." *Johnson*, 975 F.2d at 608. In weighing an untimely amendment, the court's foremost concern is the diligence of the party seeking the amendment. *Kamal v. Eden Creamery*, 88 F.4th 1268, 1277 (9th Cir. 2023) (citing *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 737 (9th Cir. 2013)). If the moving party was not diligent, the inquiry should end. *Zivkovic v. S. California Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002). Where the court finds good cause, it turns to Rule 15 to determine whether the amendment should be granted. *Johnson*, 975 F.2d at 608.

Rule 15 generally governs the amendment and supplementation of pleadings before a court's scheduling order deadline expires. With respect to motions to amend before trial that are not a matter of course, Rule 15 permits amendment "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). If the opposing party does not consent to an amendment, "[t]he court should freely give leave when justice so requires." *Id*. This standard favors amendment and should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Five factors guide a court's analysis of whether a motion for leave to amend is appropriate: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

1990); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these five factors, the Ninth Circuit has found the most crucial to be whether an amendment would prejudice the opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also Eminence*, 316 F.3d at 1052 (explaining prejudice is the touchstone of the inquiry under Rule 15(a)). The party opposing an amendment carries the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

### III.    ANALYSIS

#### A.    Plaintiffs' Second Motion to Amend Scheduling Order

Plaintiffs request an amended scheduling order so they may amend their complaint, resolve a discovery dispute, and take discovery on new alleged disclosures (Dkt. 28-1 at 3). Plaintiffs explain they need additional time to amend their complaint and take new discovery regarding allegations in the *Stillahn* proceeding, which they describe as involving a "potential separate but related unauthorized disclosure" (*id.*). They also request additional time to resolve an ongoing discovery dispute, which they hope to resolve via court mediation, because "Defendant has no intention of producing documents that are relevant to Plaintiffs' claim for punitive damages" and because the IRS has asserted privilege over documents Plaintiffs now demand, among other issues (*id.* at 6-7). At the time of their motion, the deadlines for fact discovery, dispositive motions, and ADR had not yet lapsed, though the deadline to amend pleadings had lapsed.

The IRS opposes Plaintiffs' proposed amended schedule and requests that the Court either (1) deny Plaintiffs' motion because they have not shown good cause for an extension of discovery or (2) amend the scheduling order to bifurcate the proceeding into liability and damages phases (Dkt. 30). The IRS explains that the Plaintiffs' outstanding discovery dispute relates mostly to

**MEMORANDUM DECISION AND ORDER - 7**

punitive damages, even though the case "will be resolved in its favor on liability grounds because the disclosures were authorized under § 6103(h)(4)(C)" (Dkt. 30 at 8). According to the IRS, bifurcation would enable the Court to determine "first whether the United States is liable at all under [26 U.S.C.] § 7431 before proceeding to damages discovery" (*id.* at 9).

If a case presents "a potentially dispositive threshold issue," courts have "routinely allowed phased discovery to test the viability of a plaintiff's individual claims" before conducting costly and extensive discovery. *Morris v. Wal-Mart Inc*., No. CV 22-16-BLG-SPW-TJC, 2023 WL 11997074, at *2 (D. Mont. July 28, 2023) (citing *Fitzgerald v. Pollard*, 2021 WL 2104959, *2 (S.D. Cal. May 25, 2021); *Pederson v. State Farm Mut. Auto. Ins. Co*., 2022 WL 2304042, *4 (D. Mont. June 27, 2022); *Young v. Mophie, Inc.*, 2020 WL 1000578, *3 (C.D. Cal. Jan. 7, 2020); and *Giglio v. Monsanto Co.*, No. 15-CV-2279-BTM (WVG), 2016 WL 4098285, at *1 (S.D. Cal. Aug. 2, 2016)). "Courts have recognized that bifurcated or phased discovery can be an efficient management tool," which can avoid "potentially wasteful discovery." *Giglio*, 2016 WL 4098285 at *1 (citing *In re Hanford Nuclear Reservation Litig*., 292 F.3d 1124, 1129 (9th Cir. 2002)).

Here, the IRS contends the dispositive issue is whether "§ 6103 authorized the disclosures of Plaintiffs' return information in *Harty*" (Dkt. 30 at 2). Section 6103 provides that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him [or her], in any manner in connection with his [or her] service as such an officer or an employee or otherwise or under the provisions of this section," 26 U.S.C. § 6103(a)(1), (3). When an IRS employee makes an unauthorized disclosure of the taxpayer's "return information," § 7431 provides a private right of action to the aggrieved taxpayer. 26 U.S.C. § 7431 ("If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any . . .

. return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.").

Statutory exceptions may narrow a taxpayer's path for relief, however. Section 7431(b) states, "[n]o liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." This "good faith" exception acts as a bar against liability. *Ingham v. United States*, 167 F.3d 1240, 1245 (9th Cir. 1999) ("Without deciding whether the disclosures satisfied the requirements of section 6103(h)(4), we hold that the good-faith exception protects defendant against liability."). Additionally, § 6103(h) provides that "a return or return information may be disclosed in a Federal or State jurisdiction or administrative proceeding pertaining to tax administration, but only . . . if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4)(C). Importantly, absent proof of actual damages, § 7431(c)(1)(B) does not authorize punitive damages against the United States. *Siddiqui v. United States*, 359 F.3d 1200, 1204 (9th Cir. 2004) ("Because the award of damages under § 7431 is allowed only pursuant to an express waiver of the Government's sovereign immunity, ambiguity as to whether § 7431(c)(1)(B) authorizes a punitive damages award absent proof of actual damages must be resolved in favor of the Government.").

Plaintiffs' outstanding discovery requests relate, in large part, to their claim for punitive damages (*see, e.g.*, Dkt. 28-1 at 2 ("Defendant's repeated refusal to produce responsive documents that go directly to issues relevant to Plaintiffs' claim for punitive damages . . . ."); *id.* at 4 ("[T]his

type of pattern evidence is directly relevant to Plaintiffs' claim for punitive damages . . . ."); *id.* at 5 (describing "evidence that is obviously relevant to Plaintiffs' claim for punitive damages"); *id.* at 11 (requesting "any information that might assist Plaintiffs in substantiating their claims for punitive damages")).[2] While the Court does not reach the merits of Plaintiffs' discovery dispute, it acknowledges the scope of Plaintiffs' requests, namely Plaintiffs seek IRS records that relate to ongoing tax court proceedings, including counterparties of SCCC in installment sale transactions (*see, e.g.*, Dkt. 28-4 at 3-6) (requesting production of "the Service's Administrative File" for examining Crow and SCCC, "all documents reviewed by [IRS] employees" in preparing the alleged amended answer in the *Harty* matter, all communications of IRS employees concerning the amended answer in the *Harty* matter, and other miscellaneous internal communications "among or between [IRS] employees" regarding the *Harty* matter, among other files). The IRS has invoked "deliberative process privilege" and statutory protections under 26 U.S.C. § 6103(e)(7) to protect these and related documents (Dkt. 30 at 6). By seeking internal IRS documents to support its punitive damages claims, Plaintiffs' requests will raise numerous and complex questions of privilege and statutory protections.

The instant record suggests Plaintiffs' "dispositive threshold issue" is the IRS's liability under § 7431(b) and its related exceptions. *See Morris*, 2023 WL 11997074, at *2. Plaintiffs'

---

[2]      On reply, Plaintiffs oppose the IRS's characterization that Plaintiffs' outstanding discovery demands "only pertain to punitive damages. (Dkt. 32 at 4 n.2). The Court recognizes that the instant motion "is not aimed at litigating the ongoing discovery dispute" (Dkt. 28-1 at 11). Still, Plaintiffs' principal motion acknowledges that their punitive damages claims and related discovery requests are a principal reason for amending the schedule (*id.*) (requesting additional time for discovery on information "that might assist Plaintiffs in substantiating their claims for punitive damages").

outstanding discovery requests relate, in large part, to their punitive damages claims. Their punitive damages, however, are only available once they show actual damages. *See Siddiqui*, 359 F.3d at 1204. The IRS has represented that many of the requested documents are privileged or confidential (Dkt. 30 at 6). Because the issues of liability and actual damages are dispositive of Plaintiffs' claims, phasing discovery to the IRS's liability under § 7431(b) and its related exceptions would avoid broad and potentially wasteful discovery. *Giglio*, 2016 WL 4098285, at *1.

Furthermore, an amended scheduling order that bifurcates the case into liability and damages phases is unlikely to prejudice Plaintiffs. *See Johnson*, 975 F.2d at 607 (addressing the question of prejudice against the party opposing modification of deadlines). Plaintiffs argue bifurcation is improper because "the question of whether 26 U.S.C. § 6103(h)(4)(C) permitted the IRS to disclose Plaintiffs' return information is not ripe for consideration"; "this case is substantially broader than the disclosures acknowledged by Defendant"; and "it would be extremely prejudicial to Plaintiffs if the Court allowed Defendant to move forward with a motion for summary judgment on its 26 U.S.C. § 6103(h)(4)(C) defense without first requiring it to produce the documents that it is improperly withholding under baseless claims of privilege," among other concerns (Dkt. 32 at 8-9). In response to Plaintiffs' concerns regarding their § 6103 claims, the Court will request a proposed scheduling order to extend discovery on liability. Plaintiffs are free to seek discovery relevant to liability, including a defense under § 6103(h)(4)(C). While Plaintiffs contend "more is at issue" than unlawful disclosure, Plaintiffs do not explain how they could proceed with their punitive damages claims unless the Court rules in their favor on liability.

**MEMORANDUM DECISION AND ORDER - 11**

The record does not indicate the IRS's request to bifurcate the schedule was because of delay or lack of diligence. *See Johnson*, 975 F.2d at 607 (considering "the diligence of the party seeking the amendment"). Here, Plaintiffs' request material to support their claims for punitive damages, among other information; the IRS contends much of this material is privileged, protected by statute, not proportional, or irrelevant (Dkt. 30 at 6). While Plaintiffs assert that the IRS has delayed discovery by claiming the material is protected (Dkt. 32 at 10), the IRS has outlined its efforts to address Plaintiffs' concerns (Dkt. 30 at 6) (explaining that the IRS provided a revised privilege log, produced additional documents, supplemented their responses, and involved deliberative process privilege and 26 U.S.C. § 6103(e)(7) statutory protections). Further, the IRS proposed bifurcation only after Plaintiffs proposed extending discovery deadlines. Accordingly, the Court denies Plaintiff's motion to amend the scheduling order. The Court will bifurcate this case between the liability and damages phases and requests that both parties submit proposed scheduling orders regarding discovery, dispositive motions, and ADR.

**B.    Plaintiffs' Second Motion to Amend Complaint**

Plaintiffs move to amend their complaint to allege additional violations of § 6103 that they claim to have only recently discovered, related to alleged unlawful disclosures in the *Stillahn* and *Sand* tax court proceedings ("*Stillahn* and *Sand* amendments"); allegations regarding additional violations in the *Harty* filings, including a claim for alleged wrongful inspection of their return information ("*Harty* amendments"); allegations supporting their claim for punitive damages ("punitive damages amendments"); and "a new claim for equitable relief pursuant to 28 U.S.C. § 2201" because of "Defendant's continued and ongoing violation of Plaintiffs' privacy rights

under 26 U.S.C. § 6103" ("injunctive relief amendments") (Dkt. 29-3 at 2). The Court addresses each of these amendments in turn.

1.    ***Stillahn* and *Sand* Amendments**

Plaintiffs move under Rule 16 to amend their allegations because of "previously unknown and unforeseen facts during the discovery period"—mainly the alleged disclosures in the *Stillahn* and *Sand* proceedings (Dkt. 29-3 at 10-11).  Plaintiffs contend they were not aware of the *Stillahn* and *Sand* disclosures until recently (Dkt. 29-3 at 11). According to Plaintiffs, they brought the instant motion to amend approximately one month after receiving the *Stillahn* draft pleading, and a week after learning of the IRS's disclosures in *Sand* (Dkt. 29-3 at 11). While the IRS argues Plaintiffs could file their claims over the *Sand* and *Stillahn* disclosures in a new suit, they do not argue that Plaintiffs could have discovered the alleged *Sand* and *Stillahn* disclosures and amended their complaint earlier in litigation (Dkt. 33 at 6, 8). Indeed, the IRS states the Rule 16 "good cause" standard does not apply to amendments "based on facts that didn't exist when the original complaint was filed" (*id.* at 6). The Court therefore finds Plaintiffs have shown good cause in seeking the *Stillahn* and *Sand* Amendments because their untimeliness was not due to Plaintiffs' lack of diligence.

Plaintiffs further argue that the *Stillahn* and *Sand* amendments are proper under Rule 15 because judicial economy weighs in favor of litigating these allegations in the instant case (Dkt. 29-3 at 12). Plaintiffs explain that while "the disclosures in the *Stillahn* and *Sand* matters are distinct from the disclosures alleged in Plaintiffs' Complaint (which involved the *Harty* matter)," the Court should adjudicate the new allegations in the instant case because of "the overlapping nature of the disclosures," "common questions of law," and that "many of the attorneys who

represent the IRS in the *Stillahn* matter are the same attorneys who are alleged to have made disclosures in the *Harty* matter," among other factors (Dkt. 29-3 at 12).

The IRS does not contest, nor does the record suggest, that Plaintiffs' *Stillahn* and *Sand* amendments are in bad faith or futile or that Plaintiffs previously amended their complaint. Instead, the IRS argues that the amendments would unnecessarily delay the case and introduce separate and new causes of action, and that Plaintiffs could file their claims regarding the *Sand* and *Stillahn* disclosures in a new suit (Dkt. 33 at 7). According to the IRS, the new allegations would "require an evaluation of the transactional relationship between Plaintiffs and taxpayers in those proceedings," "go well beyond litigating whether the IRS's disclosures meet the transactional relationship test," and involve "claims for wrongful inspections and disclosures related to expert reports filed in those matters" (*id.* at 8). The IRS suggests these allegations would generate complex discovery and legal analysis regarding whether the *Stillahn* and *Sand* disclosures were authorized in those proceedings (*id.*).

If the Court denies Plaintiffs' *Stillahn* and *Sand* amendments, the Plaintiffs may ultimately file another lawsuit in the District. Those lawsuits would risk generating the type of "piecemeal" litigation that courts generally discourage. *See generally Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857-58 (9th Cir. 1986) (explaining that Rule 15 was not intended to permit a plaintiff to engage in piecemeal litigation). While these amendments would spawn additional discovery, the legal issues appear identical to the instant case, mainly, whether the alleged IRS disclosures in a tax proceeding violated § 6103 and its related subsections. The Court is already bifurcating this case between liability and damages, which would streamline discovery on the *Stillahn* and *Sand* proceedings. The record does not suggest litigating the *Stillahn* and *Sand* amendments in the

MEMORANDUM DECISION AND ORDER - 14

instant case would prejudice the IRS; all three proceedings appear to share common questions of law, similar actors, and other similar facts. Accordingly, the Court grants Plaintiffs' motion for leave to amend as to the *Stillahn* and *Sand* amendments.

### 2. *Harty* Amendments

Plaintiffs also move to amend their allegations to include additional violations regarding the *Harty* proceeding, including a claim for alleged wrongful inspection of their return information (Dkt. 29-2 at ¶¶ 29-38). Plaintiffs do not explain why they were unable to bring these amendments before the Court's scheduling order deadline for amended pleadings. These amendments to the *Harty* disclosures appear to respond to issues the Court addressed in its order on the IRS's motion to dismiss. Plaintiffs had the Court's ruling before the amended pleading deadline and thus should have been aware of these issues before the deadline. Accordingly, the Court denies Plaintiffs' motion for leave to amend regarding the *Harty* wrongful inspection allegations because Plaintiffs have not shown good cause for the untimely amendment.

### 3. Injunctive Relief Amendments

A movant must show good cause to amend his or her pleading beyond the scheduling order deadline. *Johnson*, 975 F.2d at 609. This factor largely turns on the diligence of the party seeking the amendment. *Kamal*, 88 F.4th at 1277. Notwithstanding this good cause factor, "[f]utility alone can justify the denial of a motion to amend." *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). A motion to amend is "futile" if the amended pleading would "fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6) [motion to dismiss]." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Broemer v. Tenet*, No. CV0104340MMMRZX, 2003 WL 27382056, at *11

(C.D. Cal. Sept. 30, 2003) (comparing a motion to dismiss with a motion to deny an amended complaint for futility).

The United States Government, as a sovereign, is immune from suit unless it waives that immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Any waiver must be express. *Id.* (citing *United States v. King*, 395 U.S. 1, 4 (1969)). Thus, a statute that invokes the government's sovereign immunity "must be strictly construed in favor of the sovereign and may not be enlarged beyond the waiver its language expressly requires." *Miller v. United States*, 66 F.3d 220, 222 (9th Cir. 1995). This presumption against waiver is particularly strong in the context of taxpayer lawsuits. *See, e.g.*, *Libitzky v. United States*, 110 F.4th 1166, 1171 n.1 (9th Cir. 2024) (affirming dismissal of a taxpayer lawsuit for failure to make a timely claim within the statute's express waiver of the Government's sovereign immunity) (citing *Mitchell*, 445 U.S. at 538). "A taxpayer bears the burden of showing that the government has waived its sovereign immunity." *Ahsan v. United States*, No. CV 13-9321 ABC SSX, 2014 WL 2142159, at *2 (C.D. Cal. Apr. 21, 2014) (citing *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987)).

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act does not authorize injunctive relief over claims "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11." 28 U.S.C. § 2201(a). Relatedly, the Anti-Injunction Act generally bars a party's claim to enjoin the collection or assessment of taxes. 26 U.S.C. § 7421 ("no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed"). Only narrow

exceptions apply to these rules, none of which the parties address in the instant case. *See Agbanc Ltd. v. Berry*, 678 F. Supp. 804, 807 (D. Ariz. 1988).

Here, Plaintiffs move to amend their complaint to add a claim under 28 U.S.C. § 2201, seeking an "order enjoining the IRS from (1) disclosing Plaintiffs' return information and (2) allowing its employees to inspect Plaintiffs' return information in violation of 26 U.S.C. § 6103" (Dkt. 29-1 at 24). Plaintiffs have the burden to show that a waiver of sovereign immunity authorizes their injunctive relief. *Baker*, 817 F.2d at 562. Plaintiffs' principal motion for leave to amend, however, does not address the issue of sovereign immunity, how enjoining the IRS from acting in those related proceedings is not a violation of the government's sovereign immunity, how their instant claim for injunctive relief is not "with respect to Federal taxes" or relates to assessment or collection of taxes, or how their claim is otherwise permitted under the Declaratory Judgment Act and Anti-Injunction Act. Instead, Plaintiffs commit two sentences in their amended complaint to stating the Declaratory Judgment Act carveout "with respect to federal taxes" is coextensive with the Anti-Injunction Act (Dkt. 29-1 at ¶ 103).[3] Plaintiffs address the merits of their amendments for the first time on reply; they cite *CIC Servs., LLC v. IRS*, 593 U.S. 209 (2021), and related cases to argue Plaintiffs injunction would "not run against a tax" and is therefore allowed under the Declaratory Judgment Act and Anti-Injunction Act (Dkt. 34 at 8). That case ruled that

---

[3]     Plaintiffs state the following in the proposed amended complaint: "While the DJA includes a carveout for actions 'with respect to Federal taxes,' the Ninth Circuit recognizes that the DJA is 'coextensive with the [Tax] Anti-Injunction Act [26 U.S.C. § 7421] despite the broader language of the former.' *Perlowin v. Sassi*, 711 F.2d 910 (9th Cir. 1983)." (Dkt. 29-1 at ¶ 103). Otherwise, Plaintiff's complaint and its memorandum of support provide no additional argument in support of their injunctive relief amendments.

MEMORANDUM DECISION AND ORDER - 17

the Anti-Injunction Act did not bar plaintiffs from pursuing a lawsuit under the Administrative Procedures Act that challenged a new IRS regulation. *CIC Servs., LLC*, 593 U.S. at 216.

Plaintiffs fail to meet their burden in addressing the Government's waiver of sovereign immunity, including how the law and facts here are like *CIC Servs., LLC*. Plaintiffs state the instant case does not relate to tax collection. But if the Court grants the Plaintiffs' injunctive relief, the Court is regulating the IRS's adjudication of the *Harty*, *Stillahn*, and *Sand* tax proceedings. *See Agbanc Ltd.*, 678 F. Supp. at 806-07 (finding injunctive relief against IRS's ability to investigate a taxpayer violates the Anti-Injunction Act because it "relate[s] to the collection or assessment of income tax"). The IRS asserts the disclosures in those proceedings are "lawful and necessary for the determination, assessment, and collection of income tax" in those proceedings (Dkt. 33 at 16). Plaintiffs do not respond to this argument regarding how their injunctive relief would enjoin the IRS from performing its duties. The Court therefore finds Plaintiffs have failed to meet their burden in showing their injunctive relief is pursuant to a waiver of the Government's sovereign immunity.[4] Accordingly, the Court denies Plaintiffs' leave to amend their complaint because Plaintiffs' injunctive relief claim, as alleged, would be futile.

### 4.    Punitive Damages Amendments

---

[4]    The Court's determination as to the futility of Plaintiffs' amendments relates only to Plaintiffs' failure to meet their burden regarding the Government's waiver of sovereign immunity as to their specific injunctive relief. Because Plaintiffs raise their principal arguments regarding the Declaratory Judgment Act and Anti-Injunction Act for the first time on reply, the Court does not address whether any attempt to seek injunctive relief against the IRS would be futile. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

MEMORANDUM DECISION AND ORDER - 18

The Court reserves judgment on Plaintiffs' punitive damages amendments until after the parties proceed to the damages phase of this case. As outlined above, the Court is bifurcating this case into liability and damages phases. Should the case move beyond liability, the Court will entertain a motion by Plaintiffs to amend their complaint to assert punitive damages.

## IV.    ORDER

**IT IS ORDERED that:**

1.    Plaintiffs' Motion to Amend the Scheduling Order (Dkt. 28) is **DENIED**. No later than twenty-one (21) days after the issuance of this Order, the parties shall submit their proposed scheduling order deadlines (including discovery, dispositive motion, and ADR deadlines) consistent with the Court's decision to bifurcate the proceeding into liability and damages phases. The Court requests either a joint proposed scheduling order or, if the parties cannot agree, each party's proposed deadlines.

2.    Plaintiffs' Motion for Leave to Amend Complaint (Dkt. 29) is **GRANTED in part and DENIED in part**. Plaintiffs may file an amended complaint consistent with this Memorandum and Decision Order no later than twenty-one (21) days after the issuance of this Order.

DATED: August 05, 2025

Amanda K. Brailsford
Amanda K. Brailsford
U.S. District Court Judge